GLOVER et al vs FITZPATRICK et al.

Opinion delivered September 25, 1902.

1. *Mortgages—Subsequent Deed Conveys Equity of Redemption.*

Where the mortgagors subsequently execute and deliver to their mortgagee a warranty deed covering the same property, the effect of this later conveyance is that of a conveyance of the equity of redemption, and vests the absolute title in the mortgagee.

2. *Mortgages—Subsequent Warranty Deed—Consideration.*

Where a mortgagor subsequently conveys the mortgaged premises to the mortgagee by warranty deed, in consideration of the indebtness secured by the mortgage, the deed is based upon a valid consideration.

3. *Mortgages—Foreclosure—Effect of Dismissal of Suit for.*

Where, pending proceedings to foreclose a mortgage, a deed is executed by the mortgagors to the mortgagee conveying the mortgaged property, the dismissal of the suit does not operate as a cancellation of the mortgage, for the deed made the title of the mortgagee absolute, and there was nothing left in the foreclosure suit to be adjudicated. A claim, therefore, that the subsequent deed conveyed more than an equity of redemption is without merit.

4. *Fraudulent   Conveyance—Option   to   Re-Purchase—Division   of   Rent—*
*Evidence.*

> A mortgagee upon delivery to him of an absolute deed to the mort-
> gaged property, dismissed his pending suit to foreclose the mortgage,
> and entered into an agreement with his former mortgagor to per-
> mit an agent of the mortgagor to re-purchase the property within
> four years and in the meantime to pay to the mortgagors 25 per cent
> of the net rentals from said property.   *Held*, that as the indebted-
> ness to the mortgagees was greater than the value of the property
> transferred to them, the contemporaneous agreement for re-purchase
> and division of the rentals did not render the whole transaction
> void as to other creditors as a fraudulent conveyance.

Appeal from the United States Court for the Southern
District.

HOSEA TOWNSEND, Judge.

Suit by B. F. Glover & Son and others against Theo.
Fitzpatrick and others.   Decree for defendant.   Plaintiffs appeal.
Affirmed.

This is an equitable action brought by appellants, all
judgment creditors of Carey & Fitzpatrick, against Theo. Fitz-
patrick,Maria Fitzpatrick,and R. L. McDonald & Co., appellees,
praying for the cancellation of a deed from Fitzpatrick and wife
to John I. Mc. Donald, conveying two lots and a two-story brick
building in the town of Chickasha, Ind. Ter.   Prior to the insti-
tution   of   this action,   Carey   &   Fitzpatrick,   a partnership
composed   of   J.   H.   Carey,   Theo.   Fitzpatrick,   and   Maria
Fitzparrick,   were   engaged   in   the   mercantile   business   at
Chickasha,   and   had   become   indebted   to   various   persons,—
among them,   R.   L.   McDonald   &   Co.,   of   St.   Joseph,   Mo.   In
December, 1895, Theo. Fitzpatrick executed his note to McDonald
& Co. for $8,000, secured by mortgage on the property in con-
troversy.   In February, 1896, the appellants obtained their

judgments against Carey & Fitzpatrick, aggregating over $3,000, upon which executions were duly issued, and returned nulla bona. In August, 1897, proceedings were instituted by McDonald & Co. against J. H. Carey and Fitzpatrick and wife for the amount of their claim, and to foreclose the mortgage above mentioned. On October, 10 1898, the following order was entered in the foreclosure suit: "On this 10th day of October, 1898, came on this cause to be heard, whereupon came Theo. Fitzpatrick and Maria Fitzpatrick, by their counsel, and answered, but came J. H. Carey wholly not. Whereupon, it appearing to the court that said cause had been settled as to Theo. Fitzpatrick and Maria Fitzpatrick, the said cause is hereby dismissed as to said Theo. and Maria Fitzpatrick, and judgment is hereby rendered against J. H. Carey for the sum of three thousand seven hundred and twenty-four dollars. * * *" On October 7, 1898, Fitzpatrick and wife executed their warranty deed to McDonald & Co., conveying the premises covered by the mortgage aforesaid and in controversy in this suit, and on the next day, October 8th, the following contract was entered into between the parties to the deed: "This agreement, made and entered into by and between John I. McDonald, party of the first part, and Theo. Fitzpatrick and Maria Fitzpatrick, parties of the second part, witnesseth that whereas the parties of the second part have this day, in consideration of the sum of five thousand dollars, conveyed to the party of the first part that certain brick building located in the town of Chickasha, Indian Territory,—said building being fifty by ninety feet, two stories high, and located on lots seven (7) and eight (8) in block forty-five (45) of the original town plat of Chickasha, Indian Territory; whereas, the parties of the second part desire to reserve the right to repurchase said building, on behalf of M. M. Beavers, at any time within a period of four years from the execution of this agreement: It is therefore understood and agreed by and between the party of the first part and the parties of the second part that

the said M. M. Beavers shall have the option of purchasing said building at any time within the period of four years upon the payment of five thousand dollars cash in hand to the said John I. McDonald: provided, the net amount of rents realized by the said John I. McDonald out of said building, after the payment of all expenses necessarily incurred, repairs, insurance, and the part hereafter stipulated to go to the parties of the second part and less the interest on the said five thousand dollars, shall be applied as a credit on said five thousand dollars, and the said party shall at any time within four years have a right to purchase said building upon the payment of said sum of five thousand dollars, less said net amount, after deducting interest on the five thousand dollars, at eight per cent., repairs, insurance, and necessary expenses.   It is further understood and agreed that if, under any provision permitting the acquiring of title to town lots in the Indian Territory, it should become necessary to purchase the lots upon which said building is located from the tribe of Indians, in that event the said John I. McDonald shall purchase said lots, the same shall be conveyed to him, and the amount paid by him shall be charged out of said rents, and be considered as a part of the necessary expenses hereinbefore mentioned; and if the said M. M. Beavers shall exercise the said option to repurchase within four years, as provided by this agreement, he shall have the right to a reconveyance of the said lots so acquired, as well as the buildings thereon located.   It is further understood and agreed that the party of the first part is to be under no liability for loss or damage to said building during said time, or of its destruction by fire, so as to prevent the exercise of option of purchase herein.   It is further understood and agreed that said building shall be kept insured in one or more good and reliable companies, if such insurance can be obtained, and that the amounts so paid for such insurance shall be deducted from the rents collected.   The amount of insurance carried shall not exceed the sum of five thousand dollars.   It is

further understood and agreed that twenty-five per cent. of the rents collected, after deducting all necessary expenses, insurance, etc., as above mentioned, shall be paid to the parties of the second part, and the remaining seventy-five per cent, shall be paid to the party of the first part.   These payments shall be made as the rents are collected by persons to be agreed upon by the parties of the first part and second part.   It is further understood and agreed that the insurance herein provided for shall be payable to John I. McDonald, but in case of loss the amount realized on such insurance shall be credited upon the amount which M. M. Beavers is required to pay to repurchase."   On the trial it was agreed that at the time the deed above mentioned was executed the property conveyed was worth $5,500.00, and that the sum of $1,418.00 had been collected as rent, of which twenty-five per cent. had been paid to Theo. Fitzpatrick and wife, in accordance with said agreement.

The case was tried before the court, which found the law to be as follows:   "In the consideration of the briefs in this case it appears to me that the counsel for the plaintiffs have entirely misapprehended the force and effect of the conveyance made by Theodore and Maria Fitzpatrick to John I. McDonald, for R. L. McDonald & Co., on the 7th day of October, 1898.   Plaintiff's counsel treat this conveyance as an absolute conveyance of the property, disregarding entirely the fact that this property had been already mortgaged in December, 1895, and before the time that Carey & Fitzpatrick were insolvent, for the sum of eight-thousand dollars, when the sole and only effect of the conveyance of October 7, 1898, was to convey the equity of redemption, and the relinquishment of the dower of Maria Fitzpatrick.   The mortgagees then entered into posesssion, and thereby became the absolute owners of the property, and, as appears from the consideration in the deed, for a much less amount than that called

for by the mortgage. The creditors in this case, being creditors of Carey & Fitzpatrick, could under no circumstances sustain any injury by the conveyance of this equity of redemption to McDonald & Co., so long as the full value of the property was credited upon the note and mortgage. The mortgage being an absolute and bona fide indebtedness, and the agreed statement of facts showing the property to be much less in value than the amount of the note and mortgage. the conveyance of this equity of redemption, and placing the whole title in McDonald & Co., could in no way cause the plaintiffs to sustain any loss. Mr. Bump, on Fraudulent Conveyances, says: 'By operation of law, and without any special agreement of the parties on the subject', such a conveyance 'effects a discharge of the mortgage debt. either wholly if the estate is sufficient, or pro rata if of less value than the amount due. To make such a transaction a voluntary conveyance as against creditors, the estate must be of greater value than the debt.' Citing authorities. And it is held in Cohn vs Hoffman, 45 Ark. 376, that the mortgagee's title dates from its inception, and the effect of such conveyance is to extinguish the equity of redemption. If this view is correct,—and I am convinced in my own mind that it is,—then there is nothing in the plaintiff's contention. It appears so me that the plaintiffs have wholly lost sight of the fact that the mortgage had never been satisfied, and a mortgagee in possession after condition broken is not obliged to sell the property, and if he remain in possession his possession is not wrongful; but when, as in this case, the mortgagor has, by a conveyance, released the equity of redemption, and the full value of the property has been credited upon the mortgage debt, the mortgagor nor none of his creditors are in any attitude to make complaint. Their rights have not been impaired or injured by the transaction, and when that conveyance was made, and its effect being to place the whole title in the mortgagee, and to take effect from the inception of the mortgagee's title, and the mortgagee being placed in posses-

sion, as shown by the agreed statement of facts, the mortgagee had the unquestioned right to make any disposition of the property as he saw fit. Hence to impound the rents and profits of this property, and tie the same up in the hands of a receiver, was wrong, and the same must be turned over to McDonald & Co.; and the receiver is therefore hereby discharged, and the bill dismissed, and the title of defendants quieted as prayed for in their cross-bill, and the defendants recover their costs against the plaintiffs, to be taxed." Judgment was rendered in accordance with the above findings, motion for new trial filed and overruled, and the cause regularly appealed to this court.

*Davidson & Riddle,* for appellants.

*Ledbetter & Bledsoe,* for appellees McDonald & Co.

CLAYTON, J. Several propositions are assigned as error in this case, but they all grow out of and rest upon the holding of the court below that the transfer from the Fitzpatricks to McDonald, dated October 7, 1898, taken in connection with the agreement executed the next day, operated as a conveyance of the equity of redemption, and vested in McDonald & Co. absolute title to the property in controversy. Fitzpatrick had been for a long time indebted to McDonald & Co., and the indebtedness was secured by a mortgage on the property in controversy, the validity of which is not questioned in this suit. Foreclosure proceedings were instituted, and during the pendency of that suit the mortgagor conveyed his equity of redemption to the mortgagee; the consideration undoubtedly being the indebtedness theretofore existing between the parties, secured by the morgtage referred to. And this is a valid consideration for a deed.

Considerable stress is laid by appellants upon the contention that the dismissal of the foreclosure suit operated as a cancellation of the mortgage, and therefore that the claim of appellees that the deed was only a conveyance of the equity of redemption

falls. But appellants lose sight of the fact that the foreclosure suit was not dismissed until after the execution and delivery of the deed; and, if the deed be valid, it made the title of the mortgagee to the mortgaged property absolute, and there was nothing left in the foreclosure suit to be adjudicated.

The only question in the case, therefore, is, was the deed from Fitzpatrick to McDonald, of date October 7th, taken in connection with the agreement of October 8th, fraudulent as against the creditors of Fitzpatrick? There is nothing in the deed itself from which any fraudulent intent can be inferred. But the agreement of October 8th is somewhat suspicious. It is not made to appear from the record who M. M. Beavers is, nor what interest, if any, he had in the controversy; but, to put the case in the strongest light for appellants, let it be assumed that he was the agent of Fitzpatrick, and secured the option to repurchase for him. So long as a debtor acts in good faith, he may make any disposition of his property he sees fit. Fitzpatrick was admittedly insolvent. He had been indebted to McDonald & Co. for several years in the sum of $8000,—$2,500, more than the agreed value of the property in controversy. He also was largely indebted to other parties, and to secure McDonald & Co., his largest creditor, he executed a mortgage to them on property less in value than the amount of their claim. This mortgage was not paid at maturity, and suit was brought to foreclose it. There is no question as to the validity of the claim of McDonald & Co., and they had undoubtedly the right to the satisfaction of their mortgage. This they could do in any way they might desire, so long as the transaction be not fraudulent. "A mere parol agreement that the debtor may repurchase the property whenever he is able will not vitiate the transfer, if no substantial interest is thereby reserved." Bump, Fraud. Conv. 194, Nor do we think that the agreement that 25 per cent. of the rents should be paid to the grantor vitiates the sale. The

only attempt to explain this provision is in the answer of McDonald, wherein it is stated that this was merely a matter of charity. There is nothing to prevent a creditor from being charitable to an insolvent debtor, after his claim has been paid; and, if the transfer be valid and for a sufficient consideration the charity of the creditor will not render it void. "It is not · * * * every benefit conferred upon a debtor that renders a transfer fraudulent, but only such as are given in prejudice of the legal rights of creditors. Strict and inexorable as the law is upon the subject of frauds, it does not require that a purchaser shall either ignore or abrogate the impulses of natural affection, or of sympathy towards the unfortunate. If the transfer is valid and in good faith, there is no principle of the common law or construction of the statute which prevents the grantee from aiding the debtor or his family, or disposing of his own as he pleases." Bump. Fraud. Conv. 197. It is true that the conveyance in this case placed the property of the insolvent beyond the reach, of his other creditors. But the claim of McDonald & Co. was just. They did not seek to take more property than would fairly cover their claim, and the fact that other creditors would lose their claims did not deprive McDonald & Co. of the right to resort to every lawful means to secure theirs.

Finding no error in the record, the judgment of the court below is affirmed.